[Cite as *State v. Highsmith*, 2018-Ohio-620.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                             Court of Appeals No. L-16-1183
                                                                                       L-16-1184
            Appellee

                                                         Trial Court No.        CR0201601690
v.                                                                               CR0201601195

Darian D. Highsmith                                      **DECISION AND JUDGMENT**

            Appellant                                    Decided:  February 16, 2018

* * * * *

Julia R. Bates, Prosecuting Attorney, and Brenda J. Majdalani, Assistant
Prosecuting Attorney, for appellee.

Joanna M. Orth, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Appellant, Darian Highsmith, appeals the August 2, 2016 judgments of the

Lucas County Court of Common Pleas sentencing him to an aggregate prison term of 16

years.  Because Highsmith's sentence is not contrary to law, we affirm.

## I. Background and Facts

{¶ 2} Highsmith's consolidated appeal arises from his guilty pleas and resultant sentences in two separate cases.  On February 2, 2016, Highsmith was indicted in case No. CR-0201601195 ("case 1") on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony.  On April 13, 2016, Highsmith was indicted in case No. CR-0201601690 ("case 2") on three counts of aggravated robbery in violation of R.C. 2911.01(A)(1), all first-degree felonies.  Count three also included a gun specification under R.C. 2941.145.

{¶ 3} On June 8, 2016, Highsmith pleaded guilty in case 1 to an amended charge of robbery in violation of R.C. 2911.02(A)(1), a second-degree felony.  In case 2, he pleaded guilty to three amended charges of robbery in violation of R.C. 2911.02(A)(1), all second-degree felonies.  The state also agreed to dismiss the gun specification at sentencing.

{¶ 4} During the plea hearing, Highsmith told the court the following facts about the crimes.  The offense alleged in case 1 happened on January 19, 2016, at the Clark gas station on Monroe Street in Toledo.  Highsmith said that he entered the gas station with two of his codefendants.  One of the codefendants dropped a baseball bat that he was carrying, which Highsmith picked up.  Highsmith demanded money from the clerk while a codefendant stole cigarettes.  One of the codefendants told the clerk that they would beat her if she moved, at which time Highsmith displayed the bat he was holding.  Highsmith and his codefendants ran out of the store when the clerk started "freaking out."

2.

{¶ 5} The offense in count one of case 2 happened on April 2, 2016, at the In and Out Mart on Berdan Avenue in Toledo. Highsmith was with his child's mother who drove him to the carryout. When they arrived, she told him that she needed liquor and money. Highsmith went into the store and asked the clerk for money while displaying the same bat that he used during the January 19 robbery. After he took the money from the clerk, he grabbed the liquor his child's mother wanted and left the store.

{¶ 6} The offense in count two of case 2 happened on March 30, 2016, at Cirilla's on Monroe Street in Toledo. Highsmith was again with his child's mother. She gave him a tire iron and told him to rob the store. Highsmith complied. He took the tire iron into the store and asked the clerk for money. When she did not immediately open the cash register, Highsmith displayed the tire iron. Highsmith left once the clerk gave him the money from the register. The state added that Highsmith left a water bottle at Cirilla's that was tested for DNA and resulted in a DNA match to Highsmith.

{¶ 7} Finally, the offense in count 3 of case 2 happened on August 31, 2015, at the Vito's Pizza on South Detroit Avenue in Toledo. Highsmith was with the three codefendants from case 1. Highsmith had an airsoft gun with him that he displayed to the store employees. One of the employees put money in bags carried by two of Highsmith's codefendants. The men left the store after they received the money.

{¶ 8} The trial court accepted Highsmith's pleas, finding that Highsmith had been advised of the consequences of his pleas and that he entered the pleas and waived his rights knowingly, voluntarily, and intelligently.

3.

**{¶ 9}** On August 1, 2016, the court held Highsmith's sentencing hearing. First, Highsmith's attorney addressed the court and asked it to consider several mitigating factors. Counsel explained that Highsmith was recently diagnosed with schizoaffective disorder and had a lengthy history of psychiatric treatment and hospitalizations. Highsmith was often unable to obtain his psychiatric medications, however, so his mental illness often went untreated. Highsmith was not taking any medications when he committed the crimes in case 1 and case 2; counsel argued that this made Highsmith susceptible to the influence of his child's mother, who threatened to prevent Highsmith from seeing his child if Highsmith did not pay the mother's bills and expenses. Counsel pointed out that Highsmith's courtroom behavior had improved over the course of the case, which counsel attributed to Highsmith receiving psychiatric medications while he was in jail.

**{¶ 10}** Additionally, Highsmith's biological parents abused drugs, and his biological father physically and sexually abused him, which led to Highsmith's placement in foster care. Highsmith was moved around in the foster care system for eight years until he was adopted when he was 10 years old.

**{¶ 11}** Counsel asked the court to take into account that Highsmith turned himself in when he learned that the police were looking for him and did not take any personal items from employees at the stores he robbed.

**{¶ 12}** Counsel requested that the court run the sentences for counts one and two of case 2 concurrently because they occurred within a short period of time and counsel believed that Highsmith was in a mental health crisis at the time.

4.

{¶ 13} Next, Highsmith addressed the court. He apologized for committing the robberies and hurting the victims and for being disrespectful to the court early in the case.

{¶ 14} After hearing from counsel and Highsmith, the court reviewed the record. The judge noted that Highsmith has a "horrible" criminal record and that he has been to prison and been unsuccessful on community control. The judge also took issue with Highsmith's claim that he only committed these crimes because of nagging by his child's mother and characterized Highsmith as a "violent criminal."

{¶ 15} The court imposed a sentence of four years in prison for each count and ordered Highsmith to serve the prison terms consecutively, for an aggregate term of 16 years. The court found that consecutive sentences are necessary to fulfill the purposes of the sentencing statute, they are not disproportionate to the seriousness of Highsmith's conduct or the danger Highsmith poses, they are necessary to protect the public from future crime and punish Highsmith, the harm Highsmith caused was so great or unusual that no single term of imprisonment adequately reflects the seriousness of his conduct, and Highsmith's criminal history requires the imposition of consecutive sentences. The court ordered Highsmith to make restitution to the victims in the aggregate amount of $1,767.74 and to pay the costs of confinement, supervision, and appointed counsel. It also dismissed the gun specification on count three in case 2.

{¶ 16} Highsmith now appeals the trial court's decisions, raising one assignment of error:

ASSIGNMENT OF ERROR I: DEFENDANT/APPELLANT'S SENTENCE SHOULD BE VACATED AS IT IS EXCESSIVE, UNREASONABLE AND CONTRARY TO LAW.

## II. Law and Analysis

{¶ 17} In Highsmith's assignment of error, he argues that the consecutive sentences the trial court imposed are contrary to law because they are harsh and the trial court did not consider Highsmith's untreated mental illness. The state contends that the sentences are lawful because the trial court complied with all applicable sentencing statutes.

{¶ 18} We review sentencing challenges under R.C. 2953.08(G)(2). The statute allows an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law. R.C. 2953.08(G)(2).

An appellate court may not review a trial court's sentence for an abuse of discretion. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 10.

6.

{¶ 19} We note that Highsmith does not challenge the trial court's compliance with any of the sentencing statutes in R.C. 2953.08(G)(2)(a). Rather, he claims that the trial court's imposition of 16 years in prison is an abuse of discretion because the sentence is excessive and the trial court did not consider his untreated mental health issues in reaching its sentencing decision. Despite Highsmith's claim to the contrary, we cannot review his sentence for an abuse of discretion. Instead, we must determine under R.C. 2953.08(G)(2)(b) if the sentence is contrary to law.

{¶ 20} As we recognized in *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 16, we still use *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, in determining whether a sentence is clearly and convincingly contrary to law. In *Kalish*, the Supreme Court of Ohio held that a sentence is not clearly and convincingly contrary to law where the trial court has considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, properly applied postrelease control, and imposed a sentence within the statutory range. *Kalish* at ¶ 18.

{¶ 21} When we consider Highsmith's sentence under R.C. 2953.08(G)(2), his argument that his sentence is contrary to law fails. Highsmith does not argue that trial court failed to consider the purposes and principles of sentencing under R.C. 2929.11 or the seriousness and recidivism factors under R.C. 2929.12; improperly applied postrelease control; imposed a sentence outside the statutory range; or made unsupported findings under any of the statutory sections listed in R.C. 2953.08(G)(2)(a).

7.

{¶ 22} On the contrary, the record shows that the trial court stated in its judgment entry of conviction and sentence that it considered the principles and purposes of sentencing and the seriousness and recidivism factors. It made the findings required under R.C. 2929.14(C)(4) to impose consecutive sentences both at the sentencing hearing and in its judgment entry. It also informed Highsmith about the terms and conditions of the mandatory three years of postrelease control that he will be subject to when he is released from prison. Moreover, the four-year sentences that the trial court imposed on each count are within the statutory range for second-degree felonies. R.C. 2929.14(A)(4) (the range of sentences that a trial court may impose for a second-degree felony is "two, three, four, five, six, seven, or eight years.")

{¶ 23} The record shows that the trial court complied with all applicable sentencing requirements when it sentenced Highsmith to prison. We therefore find that Highsmith's sentence is not clearly and convincingly contrary to law under R.C. 2953.08(G)(2). Accordingly, Highsmith's assignment of error is not well-taken.

### III.  Conclusion

{¶ 24} Based on the foregoing, the August 2, 2016 judgments of the Lucas County Court of Common Pleas are affirmed. Highsmith is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

8.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____
                                                      JUDGE
James D. Jensen, J.

Christine E. Mayle, P.J. _____
CONCUR.                                          JUDGE

                                       _____
                                                      JUDGE